## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

Rosemary Clark[1] and Patrick DeAngelis, :

              Plaintiff,         :     Hon. Joseph H. Rodriguez

          v.              :     Civil Action No. 10-6725

Bally's Park Place. Inc., et. al.,    :     **Opinion**

              Defendants.     :

_____

     This matter arises under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a et seq. Defendant Bally's Park Place ("Bally's") owns and operates Defendant Bally's Casino and Hotel in Atlantic City, New Jersey. Patrick DeAngelis ("Plaintiff") is a former Dealer in the Table Games Department at Bally's.[2] Plaintiff alleges that Bally's requires its dealers to attend pre-shift meetings called "Buzz Sessions." "Buzz Sessions" are bi-weekly meetings which occur approximately 5 to 10 minutes before the start of a dealer's scheduled shift. At the Buzz Sessions, dealers discuss current promotions, events, and ways to deliver excellent customer service and satisfaction. Plaintiff alleges that the Dealers are not paid for their required attendance at the Buzz Sessions, in violation of the NJHWL.

---

[1] Rosemary Clark was also a named plaintiff in this case; however, she voluntarily dismissed her claims against Defendants on January 25, 2012. [Dkt. 37].

[2] Bally's is owned and operated by Bally's Park Place, Inc., a wholly owned subsidiary of Caesars Entertainment Operating Company, Inc. (f/k/a Harrah's Operating Company, Inc.). In turn, Caesars Entertainment Operating Company, Inc. is a wholly owned subsidiary of Caesars Entertainment Corporation. These entities are hereinafter known as "Defendants."

Presently before the Court is Plaintiff's Motion for Class Certification [Dkt. No. 48] pursuant to Fed. R. Civ. P. 23.  Plaintiff brings this motion on behalf of himself and all former and current non exempt hourly employees in the Table Games Department of Bally's who were required to attend the "Buzz Sessions" without pay, in violation of the NJWHL, N.J.S.A. 34:11-56a et seq.  The Court has considered the written submissions of the parties and the arguments advanced orally at the hearing on May 2, 2013.  In addition, on June 25, 2013, the Court directed the parties to submit supplemental briefing specifically addressing the Supreme Court's decision in Comcast Corp. v. Behrend, 133 S.Ct. 1426 (2013).  For the reasons set forth below and for the reasons expressed on the record at the hearing, Plaintiff's Motion for Class Certification is granted.

## I. Background

Plaintiff alleges that Bally's requires its dealers to attend pre-shift Buzz Sessions during which Bally's managers discussed current promotions, events, and ways to deliver excellent customer service and satisfaction.[3]  At the heart of this case lies Plaintiff's allegation that although Bally's required attendance at Buzz Sessions, the dealers are not compensated for this time.  Instead, dealers' work time is calculated starting at the time that their scheduled shift begins.  According to Plaintiff, Defendants' timekeeping system and the manner in which employees are directed to clock-in and clock-out, precludes all members of the proposed class from recording their attendance at the Buzz Sessions.  Specifically, Plaintiff alleges that pursuant to Bally's policy detailed in the Employee Handbook, employees are specifically instructed to clock in no

---

[3] Buzz Sessions are actually held four times each week, but each shift has biweekly Buzz Sessions on Tuesdays and Saturdays between 11:50 a.m. and 11:55 a.m. for Dealers working the day shift, and on Tuesdays and Fridays at approximately 7:55 p.m. for swing shift Dealers.

more than three minutes prior to the start of their shift and to clock out no more than three minutes after the end of a shift.  The result is a six minute window to clock in and out that relieves Bally's of any overtime pay obligation, because overtime is automatically assigned after eight minutes. See Pl. Ex. 9, Bengis Dep., 33:3-19; 34:23-35:4.  Plaintiff contends that an employee who attends a five to ten minute Buzz Session prior to the start of a shift cannot clock in before the Buzz Session because of the three minute clock-in rule that governs the  start of their scheduled shift.

Plaintiff also alleges that if an employee inadvertently clocks-in prior to attending the Buzz Session, they still are not paid for that time, because Bally's uses a centralized payroll and time-keeping system called "Timeworks," which automatically subtracts the employees' clock-in and clock-out time to the closest quarter hour.  According to Plaintiff, hourly employees are not paid if they clock in a certain number of minutes before their shift or clock out a certain number of minutes after their shift ends.

The upshot of the above scenarios is that Bally's avoided compensating these employees for time spent in attendance at Buzz Sessions.  Moreover, because Bally's does not take attendance at these sessions, as required by N.J.S.A., 34:11-56a20, there is no way for the proposed class to definitively prove they are entitled to damages. Instead, Plaintiff argues that because attendance at Buzz Sessions was required, attendance is assumed.  See Pl. Ex. 2, Yeager Dep. 67:18-25; 113:5-22 (stating that attendance at Buzz Sessions is required compensable time).

## The Class

Though the instant motion, Plaintiff seeks class certification under Rule 23 on behalf of:

> [A]ll current and former non-exempt (hourly) employees who have worked at the Table Games Department in Bally's Atlantic City casino and were required to attend 'pre-shift' meetings any time from December 22, 2008 through the present (the "[c]lass [p]eriod"), in connection with New Jersey wage and hour claims arising from Bally's Park Place, Inc. and Bally's Atlantic City[] (collectively "Bally's") failure to: (a) pay overtime wages to the Class for all work exceeding 8 hours in a day and 40 hours in a week . . . ; (b) pay straight time wages for pre-shift work . . . ; (c) and to keep time records . . . (Pl.'s Mot. 1.)

## II. Standard of Review

"To obtain class action certification, plaintiffs must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." Baby Neal v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). "[T]he requirements set out in Rule 23 are not mere pleading rules." In re Hydrogen Peroxide, 552 F.3d, 305, 316 (3d Cir. 2008). Courts must critically examine the allegations, see Barnes v. Amer. Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998), because "the class determination generally involves considerations that are 'enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1977) (citation omitted). In this regard, class certification is only appropriate if the Court "'is satisfied after a rigorous analysis, that the prerequisites' of Rule 23 have been satisfied." Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2551 (2011) (quoting Gen. Tel. Co. of the S.W. v. Falcon, 457 U.S. 147, 161 (1982)).

Pursuant to recent precedent, the "rigorous analysis" requires the Court to "delve beyond the pleadings" and "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on

elements of the cause of action." <u>Marcus v. BMW of N. Am.</u>, 687 F.3d 583, 591 (3d Cir. 2012).  "Rule 23 gives no license to shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met." <u>Id.</u>  Indeed, the Court "cannot be bashful" in performing the "rigorous analysis" of the Rule 23 considerations. <u>Id.</u> "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." <u>Hydrogen Peroxide</u>, 552 F.3d at 320. Accordingly, a plaintiff must show by a preponderance of the evidence that the class is "currently and readily ascertainable based on objective criteria," <u>Marcus</u>, 687 F.3d at 593.

Defendants argue that even if Plaintiff can satisfy Rule 23 (a), Plaintiff fails to demonstrate that questions of law or fact common to members of the class predominate over questions affecting individual members, as required by Rule 23 (b).  Defendants claims that the individualized nature of the damages overwhelm the class as proscribed by <u>Comcast</u>, 133 S. Ct. 1426.  Finally, Defendants contend that Plaintiff cannot show that, under Rule 23 (b) (3), a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

The Court will first consider whether Rule 23(a)'s prerequisites are met and then analyze whether this action is maintainable under any of the three provisions of Rule 23(b).

### III. Analysis

**A. Rule 23(a) Prerequisites**

Federal Rule of Civil Procedure 23(a) provides:

> One or more members of a class may sue or be sued as
> representative parties on behalf of all members only if: (1)
> the class is so numerous that joinder of all members is
> impracticable; (2) there are questions of law or fact common
> to the class; (3) the claims or defenses of the representative
> parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately
> protect the interests of the class.

Fed. R. Civ. P. 23(a). The requirements of numerosity[4], commonality, typicality, and

adequacy of representation "'are meant to assure both that class action treatment is

necessary and efficient and that it is fair to the absentees under the particular

circumstances.'" Barnes, 161 F.3d at 140 (quoting Baby Neal, 43 F.3d at 55).

Defendant argues that Plaintiff's proposed class is not ascertainable and

attendance at Buzz Sessions is not required.  Defendant also argues, under Rule

23(a)(2), that Plaintiff has not shown that there are questions of law or fact common to

the class or, under Rule 23(a)(3), that Plaintiff's claims are typical of the claims of the

class.

### 1. **Whether Plaintiff's proposed class is ascertainable**

Plaintiff satisfies the "essential prerequisite" of proposing a class whose members

can be readily and easily ascertained. Marcus, 687 F.3d at 592-93.  "Class certification

presupposes the existence of an actual 'class.'" White v. Williams, 208 F.R.D. 123, 129

(D.N.J. 2002) (quoting In re Sch. Asbestos Litig., 56 F.3d 515, 519 (3d Cir. 1995)).  A

class "must be currently and readily ascertainable based on objective criteria." Marcus,

687 F.3d at 593. Plaintiff must demonstrate two criteria to establish ascertainability:

"First, the class must be defined with reference to objective criteria. Second, there must

---

[4] There is no dispute that the proposed class meets the numerosity requirement.

be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Hayes v. Wal–Mart Stores, Inc., 725 F.3d 349, 355 (3d Cir. 2013). Thus, "where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails," unless "there is a reliable, administratively feasible alternative" to achieve this end. Id. at 593-94. Further, "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Id. at 593.

A court must not "approv[e] a method that would amount to no more than ascertaining by potential class members' say so." Id. at 594. Thus, evidence of ascertainability must exceed a "party's assurance to the court that it intends or plans to meet the requirements [of Rule 23.]" Hydrogen Peroxide, 552 F.3d at 318. The evidence must support the proposed method's success and provide a window to determining how the case will be tried. Id. at 319 (citing Fed.R.Civ.P. 23 advisory committee's note, 2003 Amendments).

Here, Defendants argue that the determination of whether a dealer fits within the proposed class is not "administratively feasible" because it requires individual factual inquiries. Carerra v. Bayer Corp., 727 F.3d 300, 308 (3d Cir. 2013). In order to be included in Plaintiff's class, the employees must have attended the Buzz Sessions; such a determination cannot be made in a manner consistent with Marcus. Defendants argue that because Buzz Sessions are held only twice each week, the first step in ascertaining the class requires Defendants to review employee attendance records to see whether a particular Dealer worked on a day that a Buzz Session was held. Then Defendants have to review each Dealer's weekly schedule or time records to determine whether their start

time provided an opportunity to attend the Buzz Sessions. "This is necessary because Dealer start times are staggered and Buzz Sessions occur at one specified time for each shift; consequently, only those Dealers scheduled to start at that specific time attend Buzz Sessions." (Def. Opp'n 11.) Next, Defendants have to determine whether any employees who had an opportunity to attend a Buzz Session *actually* attended. Finally, Defendants have to determine whether (and for how long) each attending class member was not on the clock during the time of their attendance, since "some Dealers clock in before attending Buzz Sessions while others clock in after attending Buzz Sessions." (Def. Opp'n 6.) Defendants argue that they do not possess any information at such a level of specificity. In particular, "there is nothing in Defendants' records or databases that shows or could show whether the employees scheduled to work on the days and at the time Buzz Sessions occurred *actually* attended Buzz Sessions." (Def. Opp'n 11-12) (emphasis in original).[5]

The Court finds that ascertaining the class is administratively feasible to the extent that Bally's can isolate which employees worked shifts that had a Buzz Session component. At the hearing in this matter, counsel agreed that Defendants could identify those employees who actually worked a "Buzz Session eligible shift" through the use of employment records. Compiling a list of employees who worked certain shifts is an

---

[5] Specifically, Defendants allege that there is no roll call or attendance taken at Buzz Sessions and Defendants maintain no records of Buzz Session attendance. Thus, according to Defendants, the only way to identify members of Plaintiff's proposed class is to ask each of the approximately 670 Dealers whether they attended Buzz Sessions during the relevant time period, a strategy which directly contradicts the Third Circuit's admonition "against approving a method that would amount to no more than ascertaining by potential class members' say so." Marcus, 687 F.3d at 594 (noting that "simply having potential class member submit affidavits" that they were harmed "would have serious due process implications," since the defendants would be forced to "accept as true absent persons' declarations that they are members of the class, without further indicia of reliability").

exercise that courts routinely require in class action cases. This case is no different and the Court finds the task is administratively feasible. Cf., City Select Auto Sales, Inc. v. David Randall Associates, Inc., --- F.R.D. ----, 11-CV-2658, 2013 WL 6726742 (D.N.J. Dec. 20, 2013) (explaining the difficulty in cases without centralized records).

Determining whether or not the members of the proposed class actually attended the Buzz Session is more problematic. Defendants contend that ascertaining those employees who actually attended the Buzz Sessions amounts to nothing more than impermissible employee say so. See Marcus, 687 F.3d at 594. The Court recognizes that ascertainability is a cornerstone of Rule 23 because a defendant must be able to challenge class membership. See Carrera, 727 F.3d at 309 (citing In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 214 F.R.D. 614, 618–19 (W.D.Wa.2003) (concluding affidavits could not be used to ascertain a class because the named plaintiffs had difficulty remembering the products they bought that contained PPA)). Indeed, "[a]scertainability provides due process by requiring that a defendant be able to test the reliability of the evidence submitted to prove class membership." Id.

Here, Defendants frustrated its due process rights when it chose to forgo role call for the Buzz Sessions it required its dealers to attend. And in doing so gained a great benefit in thwarting a potential class action. Under this scheme, proving attendance would always fall on an employee's say so. The NJWHL provides that "[a]ll of the time the employee is required to be at his or her place of work or on duty shall be construed as hours worked." N.J.A.C. 12:56-5.2. Defendants cannot hide behind its failure to abide by the regulations to insulate itself from a class action on the very issue. As a result, attendance at the Buzz Session can be assumed if the Buzz Session is required work duty.

## **2. Whether Plaintiff alleges questions of law or fact common to the class**

The Court finds that Rule 23 (a) (2)'s requirement of "commonality," which requires a showing that "there are questions of law or fact common to the class" is satisfied. Fed. R. Civ. P. 23(a)(2).  The Supreme Court recently described a two-pronged approach to this inquiry in Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011).  In doing so, the Court raised the commonality bar "considerably."  See Troncone v. Velahos, No. 10-2961, 2003 WL 1222630 at *3 (D.N.J. Mar. 25, 2013).   With respect to the first prong, the Court noted that "[a]ny competently crafted class complaint literally raises common 'questions,'" such as, "[i]s that an unlawful employment practice?" Dukes, 131 S.Ct. at 2552 (citation omitted).  But merely "[r]eciting [such] questions is not sufficient to obtain class certification." Id.  Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Id. (citing Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)).  This second prong "does not mean merely that [the class members] have all suffered a violation of the same provision of law." Id.  Instead, "[t]heir claims must depend upon a common contention . . . that [] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.  In this regard, the Court noted that because "Rule 23 does not set forth a mere pleading standard[, a] party seeking class certification must affirmatively demonstrate his compliance with the Rule." Id.

Plaintiff argues that the central issue is whether non-exempt employees in the Table Games Department at Bally's Atlantic City worked off-the-clock and were not paid.

(Pl.'s Mot. 11.)  Plaintiff claims this "common issue" is "comprised of several common questions," including, *inter alia*:

o   Whether Bally's required employees in the Table Games Department to attend [B]uzz [S]essions; and

o   Whether attending pre-shift [B]uzz [S]essions is "work" within the meaning of New Jersey's labor laws; and

o   Whether Bally's policies mandated class members to perform th[ese] unpaid work activities before and after their shifts; and

o   Whether, as a result of these practices, Bally's failed to pay all wages due and owing under the New Jersey labor laws; and

o   Whether Bally's conduct constituted a violation of N.J.S.A. 34:11-56a20.

Plaintiff argues that adjudications on behalf of one person are properly applied to the situations of all.

Defendants offer three declarations from current Bally's employees to show dissimilarities in the experiences of potential class members and to demonstrate that the 'central issue' of whether Dealers worked off-the-clock and were not paid cannot be resolved in one stroke.  See generally, Def. Ex. 8, Matthews Decl.; Ex. 5, Duong Decl.;Ex. 6, Lam Decl.  As discussed infra., the three declarants, in general terms, state that attendance at Buzz Session was not required, that they did not always attend the Buzz Session, and that they may have clocked in prior to attending a Buzz Session. Defendants also argue that the experiences of the other 667 putative class members can be ascertained only by taking testimony from each of them. Thus, class certification is dependent upon individualized mini trials that impede the generation of common

answers to any 'common questions,' making class certification inappropriate.  (Def. Opp'n. 15) (citing <u>Dukes</u>, 131 S. Ct at 2551). The Court disagrees.

There is no evidence and the Defendants' declarants do not contend that employees were in fact paid for this work.  Even though the Declarants state most Dealers clock in before attending the Buzz Sessions, there is no proof that the dealers that may have clocked in were compensated for this time, especially in light of Defendants' policy of rounding time in quarterly hour increments.[6]  In addition, Defendants recognize that, according to the Employee Handbook, employees "should not clock in more than three minutes 'before starting work.'" (Def. Opp'n, 27) Defendants also do not dispute that attendance at Buzz Sessions is considered "'work,' and assert that, according to Bally's policy, Dealers may clock in up to three minutes before attending a Buzz Session.  (<u>Id.</u>).

As a result the Court finds that the the commonality requirement is satisfied.

### 3. Whether Plaintiff's claims are typical of the class claims and Plaintiff adequately represents the class

Plaintiff's claims meet the typicality requirement under Rule 23(a)(3) because "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  Typicality "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the

---

[6] With respect to the time-clock rounding argument, Defendants argue that this averages out over time, which is permissible under N.J.A.C. 12:56-5.8.Defendants theorize that "If, for example, a Dealer is scheduled to work 12:00 noon to 8:00 p.m. and clocks in just prior to attending a five-minute pre-shift Buzz Session, Plaintiff is correct that the Dealer would not be paid for that time because the timekeeping system would round up to the hour." (Def. Opp'n 27).  "If, however, the Dealer is scheduled to work 12:00 noon to 8:00 p.m. and clocks in prior to attending a ten-minute pre-shift Buzz Session, the Dealer will be paid for fifteen minutes of work because the timekeeping system would round back to the quarter hour." (Def. Opp'n 27).  Thus, there is a question of facts as to the nature of the time keeping system and whether supervisors automatically cut unapproved overtime.  If overtime was always cut, as the record suggests, it impacts the class uniformly.

class[,] even though common issues of law or fact are present.'" Marcus, 687 F.3d at 598 (quoting 7A Charles Alan Wright et al., Federal Practice and Procedure § 1764 (3d ed. 2005)).

Because the typicality requirement helps "ensur[e] that the class representatives are sufficiently *similar* to the rest of the class," a court cannot even begin to undertake this comparative analysis "without knowing something about both the individual and the class." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009) (emphasis in original). This 'knowledge' component is implicit in each of the three prongs of the typicality analysis set forth in Schering Plough: "[1] the similarity of the legal theory and legal claims; [2] the similarity of the individual circumstances on which those theories and claims are based; and [3] the extent to which the proposed representative may face significant unique or atypical defenses to her claims." Id. at 597.

Here, Plaintiff argues that "[t]he threshold for establishing typicality is low." Plaintiff claims that he "has alleged a common pattern of wrongdoing, and will present the same evidence (based on the same legal theories) to support both his claims and the claims of the [c]lass [m]embers." (Pl.'s Mot. 12.) Specifically, Plaintiff argues that he "was subject to the same company practices, policies and decisions that harmed the other class members," and that "[t]he essence of each putative [c]lass [m]embers' [sic] claim is precisely the same and is based on Bally's policy of not paying for all time worked related to attendance at pre-shift [B]uzz [S]essions." (Pl.'s Mot. 13.)

The Court agrees with Defendants' argument that Plaintiff lacks evidentiary support regarding the experiences of other class members; Plaintiff does not submit a single declaration or affidavit to suggest that his experiences are typical of the 670 absent class

members he seeks to represent.  (See Def. Opp'n 15.) Moreover, Defendant provides three affidavits from current employees that state that attendance at Buzz Sessions may not have been required, that employees did not always attend the sessions, and/or that there was no penalty for skipping the Buzz Session. See Def. Ex. 8, Matthews Decl., ¶¶ 8-10; Ex. 5, Duong Decl., ¶¶ 8-10; Ex. 6, Lam Decl., ¶¶ 7-9.  In addition, the affidavits are offered to support the notion that some dealers may have clocked-in before the Buzz Session, while others did not. Id.

Nonetheless, the Court finds that Plaintiff satisfies the burden of demonstrating typicality.  First, Defendants' own supervisors testify that Buzz Sessions are required and employees should be compensated for this time.  Plaintiff's offer a letter from Defendant's Vice President of Labor Relations, dated March 26, 2009 and intended for the New Jersey Department of Labor & Workforce Development, which states that Bally's employees "report to work ten (10) minutes before the start of their shift in order to attend buzz sessions and to receive information relative to special events, restaurant schedules, entertainment, etc." Pl. Ex. A1, Tartaglio Ltr.  The letter identifies the time spent at Buzz Sessions as *de minimus* and therefore not compensable.  Id. However, Regional Vice President of Human Resources testifies that attendance at Buzz Sessions is work and employees should be compensated for their attendance. See Pl. Ex. 2, Yeager Dep., 67:18-25; 113:5-22.

Second, there is substantial evidence in the record supporting the notion that attendance at Buzz Sessions is a job requirement.  See, supra. Plaintiff's Performance Appraisal Feedback, the Employee Handbook, and the Dealer Job Description all serve to establish that the dealer was to keep abreast of daily information, typically provided at the Buzz Sessions.  See Pl. Ex. B3.  Indeed the Employee Handbook states that it is a

14

dealer's "responsibility to keep up-to-date on information made available to you via buzz sessions, bulletin boards, the property newsletter, department meetings, training, etc." Id.  Because dealers are evaluated on their "Welcome/Readiness," Defendant's contention that no one was ever "written up" for missing a Buzz Session is unpersuasive in its application.  An evaluation that gives low marks for "Welcome/Readiness" is similar to being "written up"; both have a negative impact on an employee's record.

As previously stated, it was common for the Daily Huddler Planner to include a statement: "Make sure that you attend a pre-shift or huddle on a daily basis." Pl. Exs. 4-5.  Defendant's Regional Vice President of Human Resources Lori Yeager confirmed that Plaintiff's department required attendance at Buzz Sessions.[7]  In addition, training materials provided to supervisors demonstrate that attendance at Buzz Sessions is required:

"Any employee that has customer contacts as part of his/her job is _required_ to participate in the Buzz Sessions." See Ex. 8, Spotlight on Service, at 1438 (emphasis in original). See also, Ex. 9, Bryant Dep., 92:15-17; Cassidy Dep., 141:16-144:16; Fetrow Dep., 75:4-76-9, 78:11-14; Harvard Dep., 89:16-19, and; Patterson Dep., 141:4-144:5 (all testifying that attendance at Buzz Sessions was required).

Third, even though an employee may have clocked in prior to a Buzz Session, there is no evidence that the employee was actually paid for that time.  The evidence supplied by Defendant detailing the use of the Time-Works system and the "three minute rule" all demonstrate that the employee was only paid for the eight hours of

---

[7] Ms. Yeager explains in deposition that the term "required," as she uses it, means there is "more of an expectation [of attendance] and there may or may not be consequences[.]"  She clarifies that the word if "mandatory" was used in relation to Buzz Session attendance, than consequences follow failure to attend. Ex. 3, Yeager Dep., 71:10-23.

work, without overtime pay.  Plaintiff's own paystub demonstrates this phenomenon; even though he clocked in for 9 hours on January 4, 2008, his supervisor "verified" only eight hours of time.  See Pl. Ex. C.

Finally, Plaintiff urges the Court to disregard the probative value of the three "happy camper" affidavits supplied by the Defendants.  These individuals were not subjected to cross examination and it is, as Plaintiff argues, unclear what the declarants meant when they stated that they "have never been told" that Buzz Sessions were required; whether they mean verbally as opposed to notification by posted memo.  Nevertheless, the affidavits do not sufficiently detract from the above described evidence of Plaintiff.  The claim that dealers were required to attend Buzz Sessions and were not compensated for such time is typical of each class member under Rule 23 (a) (3). Even if a class member "clocked in" before a Buzz Session, the Defendant's time keeping policies demonstrate that a dealer was not paid for such time. As a result, the claim that dealers were required to attend Buzz Sessions and were not compensated for such time is typical of each class member under Rule 23 (a) (3).

Plaintiff satisfies the requirements of Rule 23 (a).

### B. Maintainability Under Rule 23(b)

Although Plaintiff has satisfied the rigorous analysis of the requirements of Rule 23(a), he must also demonstrate that the action is maintainable under Rule 23(b)(1), (2), or (3). Amchem Prods. v. Windsor, 521 U.S. 591, 613, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Rule 23 (b) (3) provides in relevant part:

> (b) Types of Class Actions. A class action may be maintained
> if Rule 23(a) is satisfied and if:
> * * *

16

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Class certification under this provision must satisfy the "twin requirements" of predominance and superiority. Newton v. Merrill Lynch, Pierce, Fenner & Smith, LLC, 259 F.3d 154, 186 (3d Cir. 2001). Each will be discussed in turn.

1. Predominance

Rule 23(b)(3)'s predominance element incorporates, and is more demanding than, the commonality requirement of Rule 23(a). In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 528 (3d Cir. 2004). Predominance requires that common issues predominate over issues affecting only individual class members. Id. The inquiry therefore "focuses on whether the efficiencies gained in resolving these common issues together are outweighed by the individual issues presented for adjudication." Cannon, 184 F.R.D. at 545 (citation omitted). "That common issues must be shown to 'predominate' does not mean that individual issue[s] need be non-existent. All class members need not be identically situated upon all issues, so long as their claims are not in conflict with each other." Id. (citation omitted). Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."

17

Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  This aspect of Rule 23(b)(3) is "far more demanding" than the commonality requirement found in Rule 23(a).  Id.

According to the Third Circuit, "[b]ecause the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Hydrogen Peroxide, 552 F.3d at 311 (citations and internal quotations omitted). Ultimately, "[i]f proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable."  Newton, 259 F.3d at 172.  The predominance inquiry requires that district courts "at the certification stage . . . examine each element of a legal claim 'through the prism' of Rule 23(b)(3)."  Marcus, 687 F.3d at 600 (citation omitted).

Here, Plaintiff argues that "the core of the present dispute is whether Bally's engaged in a systematic and widespread practice of disregarding its contractual, statutory, and regulatory obligations to hourly employees in the Table Games Department [] by encouraging off-the-clock work."  (Pl.'s Mot. 15.)  More specifically, Plaintiff states, "[a]ll putative [c]lass members, including Plaintiff, were employed by Bally's and assigned to work in the Table Games Department as hourly paid, non-exempt employees, recorded their time in the same way, worked before their scheduled shifts, were subject to Bally's improper timekeeping rules, and were deprived of earned wages. Bally's maintained a class-wide policy that uniformly required employees to attend pre-shift [B]uzz [S]essions, while not paying them for that work."  (Pl.'s Mot. 15-16.)

18

Defendants argue that Plaintiff's claims are unsupported conclusions and viewing the claims "through the prism" of Rule 23(b)(3) yields the following results:  (1) "there is no way to determine whether any Dealer attended Buzz Sessions and was not paid for such attendance as alleged by Plaintiff without specific testimony from that individual employee," (Def. Opp'n. 18); (2) "whether a Dealer clocked in before attending Buzz Sessions is similarly incapable of proof through evidence common to the class where Plaintiff claims he could not clock in prior to attending Buzz Sessions, but [declarations from] other Dealers [indicate that they] have always clocked in prior to attending Buzz Sessions," (Def. Opp'n 19); and (3) "determining whether Dealers were compensated if they were relieved from their shift late cannot be answered by evidence common to the class.  Specifically, Plaintiff claims that he was not compensated when relieved from his shift late, but other Dealers confirmed that they were always paid for that time."  (Def. Opp'n 19.)

Defendants separately argue that their "defenses also require individualized inquiries, making certification under Rule 23(b)(3) inappropriate.  This is particularly true with respect to the defense that any alleged off-the-clock time is offset by paid meal periods such that no overtime was incurred and Defendants have no liability."[8]  (Def. Opp'n 20).

---

[8] For support, Defendants cite the Court's summary judgment opinion, in which Plaintiff prevailed [Dkt. 43].  There, the Defendants moved for summary judgment as to Plaintiff's individual claim, maintaining that "regardless of the merits of his claim, Plaintiff used at least one of his paid twenty-minute breaks as a meal period, which more than offset the time that Plaintiff allegedly performed pre- and post-shift work each week, such that no overtime was incurred."  (Def. Opp'n 20.)  Defendants remind the Court that although they did not prevail, this Court explained that "whether Plaintiff's . . . twenty-minute break periods are non-compensable meal periods is determined by the predominant benefit test, which evaluates: (1) the limitations and restrictions placed upon employees, (2) the extent to which those restrictions benefit the employer, (3) the duties for which the employee is held responsible during the break, and (4) the frequency in which meal periods are interrupted."  (Def. Opp'n 20.)  Thus, "[b]ased

The Court disagrees and finds that the issues predominate over the class. Defendants' argument that a class fails whenever the damages calculations are not uniform, so as to predominate over the class, misapplies the Supreme Court's holding in Comcast.  In Comcast, the Supreme Court recently invalidated a methodology by which plaintiff constructed its antitrust damages model, and noted that "[w]ithout presenting another methodology, respondents cannot show Rule 23(b)(3) predominance," since "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." 133 S. Ct. at 1433.   There is a question as to whether the Court's language suggests that whenever damages are not uniform, a proposed class cannot satisfy the predominance inquiry.  In addition, when considered against the language in the Comcast dissent which states that "the decision should not be read to require, as a prerequisite to certification, that damages attributable to a classwide injury be measureable 'on a class-wide' basis'," there is a dispute over whether Comcast casts a wide net over the question of whether damages predominate. See Haskins v. First American Title Ins. Co., 10-CV-5044, 2014 WL 294654, *15, n.26 (D.N.J. January 27, 2014) (citing Comcast, 133 S.Ct. at 1437 (Ginsburg & Breyer, JJ., dissenting)). Likewise, other courts characterize Comcast's damages admonition as dicta and unique to the nature of the methodology employed in Comcast's antitrust setting. See Haskins, 10-CV-5044, 2014 WL 294654, *15 ("There is disagreement among the parties, however, and certainly among the courts within the Third Circuit, as to whether or not this "damages

---

on this Court's opinion on Defendants' motion for summary judgment, Defendants' offset defense – and whether Defendants choose to pursue such a defense – will necessarily vary from class member to class member depending on whether the Dealer was able to eat a full meal during a twenty-minute break and the frequency with which his or her breaks were interrupted." (Def. Opp'n 21.)  Defendants then give examples of how individualized this defense would be with respect to three separate putative class member-declarants (Def. Opp'n 21-22), and conclude that "those individual issues would swallow any common issues in this case, making class treatment inappropriate."  (Def. Opp'n 23.)

on a classwide basis" language is merely dicta or binding precedent.") (Compare, Bright v. Asset Acceptance, LLC, 292 F.R.D. 190, 2013 U.S. Dist. LEXIS 108432, at * 36, 2013 WL 3990817 (D.N.J. August 1, 2013) (finding that the "Supreme Court's recent opinion in [Comcast v.] Behrend is clear that a plaintiff seeking class certification must present a reliable method for calculating damages on a class-wide basis."), with Reyes v. Zions First National Bank, No. 10–345, 2013 U.S. Dist. Lexis 136312, at *19 n. 5, 2013 WL 5332107 (E.D.Pa. Sept. 23, 2013) (finding that the Comcast holding placed "an emphasis on a court's ability to delve into the merits of case ... and not on the necessity of proving damages on a classwide basis.").

The Court finds that the present case is distinguishable from Comcast because the damages calculations are more straightforward than those considered in Comcast. While the damages model in Comcast contemplated several hypotheticals that impacted members of that class differently, all of the present class members are similarly situated; the class is impacted uniformly by Defendants' failure to pay for the time spent in attendance at Buzz Sessions.  Although the nature of the pay rate for each particular class member may differ and the duration of each Buzz Session may slightly differ, this is not the type of individual consideration that overwhelms a class under Comcast.  See Leyva v. Medline Indust., 716 F.3d 510, 514 (9th Cir. 2013) (Decided after Comcast and noting that "damage determinations are individual in nearly all wage-and-hour class actions."); Neale v. Volvo Cars of North America, LLC, 10–CV–04407, 2013 WL 567435, *2 (D.N.J. October 16, 2013).  In Neale, the court certified a class where plaintiffs sought to "represent six statewide classes of Volvo purchasers or lessees." Neale, 2:10–CV– 4407, 2013 WL 1223354, at *12.  In Neale, on a motion for reconsideration defendant argued that the court overlooked defendant's damages arguments pursuant to Comcast.

The court denied the motion on the ground that "in Comcast; the plaintiffs solely relied on one expert to establish classwide damages, and the Supreme Court found that expert's methodology to be unsound." Id., *12 (citing Comcast, 133 S.Ct. at 1431). Unlike the "Supreme Court['s] reject[ion of] a flawed hypothetical damages model in that case," the Neale court found that the damages calculation at issue was straightforward, and therefore not inappropriate under Comcast. Id. As a result, this Court finds that the issues predominate the class.

    2.  Superiority

      The Court finds that a class action is the superior method of adjudicating the controversy. When class certification is sought under Rule 23(b)(3), the court must also find "that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the Court must "balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." Georgine v. Amchem Prods., 83 F.3d 610, 632 (3d Cir. 1996).

      Numerous factors inform the Court's decision. See Merlo v. Fed. Express Corp., No. 07-4311, 2010 WL 2326577, at *8 (D.N.J. June 7, 2010). "Class litigation is not superior to other methods of adjudication," when it would "not be practicable . . . to undertake the individualized inquiries necessary for the potential claims." Id.; see also Masterson v. Fed. Express Corp., 269 F.R.D. 439, 445 (M.D. Pa. 2010) (finding, on nearly identical facts as Merlo, that "individual issues of fact predominate over any common issues, and therefore, class litigation is not superior to other methods of adjudication"). Similarly, Rule 23(b)(3)(D) states that the putative class action must be manageable, a requirement that "encompasses the whole range of practical problems

that may render the class action format inappropriate for a particular suit." Eisen v. Carlisle & Jacquelin, 417 US 156, 164 (1974).  In Mann v. TD Bank, N.A., the court observed that manageability "includes whether the court can feasibly ascertain class members," and that "[a] court should not certify a class if determining class membership will require fact-intensive mini-trials."  No. 09-1062, 2010 WL 4226526 at *18 (D.N.J. Oct. 20, 2010) (internal citation omitted).  Finally, although class members' "claims [may be] relatively modest and separate suits may be impracticable, that factor by itself is insufficient to overcome the hurdles of predominance and superiority and efficient and fair management of a trial, which Rule 23(b) requires." In re LifeUSA Holding, Inc., 242 F.3d 136, 148 n.13 (3d Cir. 2001).

Defendants argue that since "neither liability nor damages turns on a common issue . . . resolution of Plaintiff's putative class claims would entail separate trials for each class member."  (Def. Opp'n 23.)  Specifically, Defendants argues that individual testimony "would be required from each employee to determine whether the employee clocked in before attending Buzz Sessions, was compensated if relieved from their shift late, received a bona fide meal period, and had uninterrupted breaks."[9]  (Def. Opp'n 23.) Defendants also reject Plaintiff's suggestion that a class action is superior due to the inferiority of the Wage Collection Division of the Department of Labor or the daunting alternative of 670 individual lawsuits, and instead argue that "Plaintiff ignores the availability of the Fair Labor Standards Act ("FLSA") collective action as an alternative method of adjudication."  (Def. Opp'n 24.)  Defendants also argue that "an FLSA collecti[ve] action would include only those individuals who opt-in and believe they have

---

[9] Defendants do not put forth any showing that the dealers are aware that break time  or lunch time can offset other work time.

not been paid for all time worked," which would not include class members whose declarations show that they "did not experience the same off-the-clock work as Plaintiff allegedly experienced."  (Def. Opp'n 24).

The Court has rejected Defendants' argument under Rule 23 (a) and (b) and finds that the Class Members' lack of financial wherewithal and the modest nature of the claims render a class action superior to alternative methods of adjudication. See Iliadis v. Wal-Mart Stores, Inc., 922 A.2d 710 (N.J. 2007) ("a claim's 'negative value' is the 'most compelling rationale for finding superiority in a class action.'").  According to Plaintiff, "Class Members' individual claims are for relatively small amounts – on average, likely not exceeding a few thousand dollars each – making it highly unlikely that any individual Class [M]ember would have the time, resources, or interest to pursue his or her claims individually." (Pl.'s Mot. 17.)  Class Members also have concerns about "losing their jobs if they individually sue their employer." (Id.)  The Court finds that Plaintiff satisfies the superiority element and the class is certified under Fed. R. Civ. 23.

## IV. Conclusion

For the reasons stated above, as well as those set forth on the record at the May 2, 2013 hearing, Plaintiff's Motion for Class Certification pursuant to Fed. R. Civ. P. 23 is granted.  Plaintiff's claims satisfy the requirements of Fed. R. Civ. P. 23 (a) because the proposed members are numerous, Plaintiff adequately represents the proposed class, and the claims are common and typical of each potential class member.  In addition, the claims predominate and the Court finds that class certification is a superior method of adjudicating the claims pursuant to Fed. R. Civ. P. (b).

An appropriate Order shall issue.



Dated: March 12, 2014


s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,
UNITED STATES DISTRICT JUDGE